UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50014 |
| versus | JUDGE WALTER |
| MICHAEL BRADY SWAN | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is **Defendant's Motion to Suppress Drugs, Gun, Grenades and Statement (Doc. 23)**. The seized items were found in Defendant's car following a traffic stop. Defendant moves to suppress the items on the following grounds: (1) the officers did not have a search warrant; (2) Defendant did not consent to the search; (3) the search was not incident to a lawful arrest; (4) the items were not in plain view; and (5) there were no exigent circumstances justifying the search. Defendant also challenges the voluntariness of his post-arrest statements, and he further claims that he was granted immunity from prosecution for certain offenses. For the reasons that follow, it is recommended that Defendant's Motion be denied.

### The Evidence

An evidentiary hearing was held on April 27, 2006. The evidence at the hearing establishes that on October 5, 2005, officers of the Bossier City Police Department were maintaining surveillance of a house in Bossier City that was used for suspected narcotics

trafficking. Sergeant Richard Broom-McGee, supervisor of Bossier City's street crime interdiction unit, received a radio call from Agent Lewis Smith notifying McGee that Defendant's vehicle had just left the target residence. Smith had seen Defendant leave the residence, but Smith did not see Defendant carrying anything to his car. Three other vehicles seen leaving the residence earlier that day had been stopped and searched, and all three were found to have illegal drugs.

Agent Smith, who was working undercover, followed Defendant and noticed that Defendant's vehicle did not have a license plate. He then radioed McGee and asked him to stop Defendant. McGee pulled behind Defendant and also observed that Defendant did not have a license plate on his vehicle and that his windows were "limousine dark." McGee activated his emergency lights and pulled Defendant over.

McGee admitted on cross-examination that he would have stopped Defendant even if his vehicle would have been completely street legal. Both McGee and Smith testified that the true reason for stopping the car was to initiate contact with the driver. However, once they noticed that Defendant did not have a license plate, they knew they would be able to search the car as part of an impound inventory of the car.

There is video and audio of the stop, but the audio is difficult to hear and understand due to the nearby traffic. Nevertheless, it is clear from the video that Defendant's car did not have a license plate, in violation of La. R.S. 32:51. The driver's side window of the car was down at the time of the stop. Defendant exited his car immediately after the stop and

approached McGee with some papers in his hand. Defendant had no proof of insurance. On the tape, Defendant can be heard saying that he "just bought this car" and was "on my way to Geico right now" to get insurance. McGee noticed a strong odor of marijuana on Defendant's person, and Defendant behaved very nervously.

When asked if he had ever been arrested before, Defendant stated that he was on parole. Defendant also was asked if he had any drugs in the car, and he responded that he had some "pot" in a pipe. Defendant was handcuffed with the assistance of another officer, and McGee told Defendant that he was going to search his car. McGee did not ask for or obtain consent for the search.

The video shows McGee approach the driver's side of the car and glance through the open window. Almost immediately, he opened the driver's side door and looked into the car and confirmed the presence of the marijuana. After briefly "frisking" the interior of the vehicle for weapons, McGee observed the grenades, and he hurried back to Defendant and insisted that Defendant tell him what is in the car. The record does not reflect that Defendant made any incriminating statements at that time. A subsequent search of the vehicle discovered a loaded pistol, various illegal drugs and the hand grenades.

Defendant was interviewed by BATFE agent John Pias the next day. Defendant was advised of his Miranda rights. Pias told Defendant that he was facing a charge under 18 U.S.C. § 924(c)(1)(B)(ii)[possession of a destructive device during a drug trafficking crime], which carries a minimum prison term of thirty years. Pias told Defendant that if he

cooperated he would instead be charged with possession of unregistered grenades under 26 U.S.C. § 5861(d), which carries a maximum prison term of up to ten years. Pias also told Defendant he would be charged as an armed career criminal.

Defendant was ultimately indicted by the grand jury with possession of a firearm by a convicted felon armed career criminal, possession of methamphetamine with intent to distribute, possession of a firearm during and in relation to a drug trafficking crime, and possession of unregistered grenades. Per his agreement with Agent Pias, Defendant was not charged with possession of destructive devices.

**Applicable Law**

The legality of a traffic stop is analyzed under the framework articulated in Terry v. Ohio, 392 U.S. 1 (1968). See Knowles v. Iowa, 525 U.S. 113, 117 (1998); Berkemer v. McCarty, 468 U.S. 420, 439 (1984); United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004)(en banc). Under the two-part Terry reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20; Brigham, supra at 506-507; U.S. v. Lopez-Moreno, 420 F.3d 420, 429-434 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. See United States v. Breeland, 53 F.3d 100,

102 (5th Cir.1995). In making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417 (1981). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., United States v. Santiago, 310 F.3d 336, 340 (5th Cir.2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. Arvizu, 534 U.S. at 274. However, it is clear that the officer's mere hunch will not suffice. Terry, 392 U.S. at 27. It is also clear that reasonable suspicion need not rise to the level of probable cause. Arvizu, 534 U.S. at 274.

As for the second prong of the Terry inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Brigham, 382 F.3d at 507. In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. Id. at 507-08. An officer may also ask the driver about the purpose and itinerary of his trip. Id. at 508. Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." Id.

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. Brigham, 382 F.3d at 510. See also Santiago, 310 F.3d at 341-42; United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193, 200 (5th Cir.1999), *corrected on denial of rehearing*, 203 F.3d 883 (5th Cir. 2000). A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. See Brigham, 382 F.3d at 507; United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003).

An officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both based on an objective test. The Supreme Court has made it clear that an officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment. Scott v. United States, 436 U.S. 128, 138 (1978); Devenpeck v. Alford, 543 U.S. 146 (2004) ("Our cases make clear that an arresting officer's state of mind ... is irrelevant to the existence of probable cause. [H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); Whren v. United States, 517 U.S. 806 (1996) ("We think these cases ... foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."). On this point, the

Fifth Circuit has stated that "[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment ...." Goodwin v. Johnson, 132 F.3d 162, 173 (1997).

**Analysis**

The officers had probable cause to stop Defendant because the car did not have a license plate as required by La. R.S. 32:51. Therefore, the traffic stop of Defendant was justified at its inception. It does not matter that the traffic violation was an "incidental reason" for the stop or that an on-going narcotics investigation was the true reason. The subjective intention of the officers is irrelevant. Goodwin, 132 F.3d at 173. Therefore, the first prong of the Terry test is easily satisfied in this case.

The court now turns to the second part of the Terry test – whether the officers' subsequent actions were "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Shabazz, 993 F.2d 431, 435 (5th Cir. 1993). Furthermore, under Brigham, the officer's subsequent actions may also be related to "dispelling [the officer's] reasonable suspicion developed during the stop." Brigham, 382 F.3d at 507.

Upon exiting his vehicle in a hurried manner, Defendant immediately notified the officer that he had just bought the car and did not have proper insurance. That additional traffic violation gave McGee probable cause to impound the vehicle at that moment. However, McGee also noticed that Defendant had a strong odor of marijuana about his

person and acted very nervously. These observations – together with the fact that Defendant had just left the target residence – created reasonable suspicion that there were drugs in the vehicle. Under Terry and Brigham, those circumstances justified detaining Defendant for further questioning so that McGee could confirm or dispel his suspicions. Indeed, McGee's detection of the strong odor of marijuana, together with Defendant's admission of the presence of the drug and his extremely nervous behavior, gave rise to probable cause to search the vehicle for drugs. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005)(detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. McSween, 53 F.3d 684, 686-687 (5th Cir. 1995)(the smell of marijuana alone may be enough for a finding or probable cause); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989) (the officer's detection of marijuana "in itself…justified the subsequent search of [the defendant's] vehicle"); United States v. Henke, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); United States v. Gordon, 722 F.2d 112, 114 (5th Cir.1983) (same); United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir.1978) (same).

The brief search of Defendant's vehicle occurred very shortly after the stop occurred, so there can be no argument or suggestion that Defendant was detained any longer than necessary to complete the purpose of the stop and to confirm or dispel the reasonable suspicion that arose during the stop. Indeed, the counter on the video shows that the length of time from the beginning of the stop [14:41:10] to the time when McGee found the grenades [14:46:20] was just over five minutes. Officer McGee acted promptly to confirm

or dispel his suspicions that drugs were in the car, and his search of the vehicle was proper because probable cause existed to believe that the vehicle contained drugs. On this basis alone, Defendant's motion should be denied.

There are two additional reasons why Defendant's motion should be denied. The Government argues that discovery of the contraband was inevitable, because the officers were going to impound the vehicle, and the contraband would be found anyway during an inventory search. That is correct. Louisiana law requires all vehicles to be covered by liability insurance. La. R.S. 32:863.1. If the operator of the vehicle is unable to provide proof of insurance, "the motor vehicle shall be impounded and the operator shall be issued a notice of noncompliance...." Id. at subsection (C)(1)(a).

Once McGee realized that Defendant did not have insurance on his vehicle, he decided to impound the vehicle pursuant to the policy of the Bossier City Police Department. As part of the impound process, an inventory search of the vehicle would be required. McGee's testimony also suggests he would have allowed Defendant to return to the car to remove any personal items prior to impounding it, but before doing so, he would have checked the vehicle for weapons. Before the impound and inventory process could begin, McGee detected the strong odor of marijuana, Defendant admitted to the presence of marijuana and McGee had probable cause for the search.

The Government also argues that McGee's search of the car and seizure of the contraband is justified by the plain view doctrine. It has long been established that law enforcement officers may seize anything they find in plain view without any search warrant.

United States v. Simmonds, 262 F.3d 468, 470 (5th Cir. 2005). In Horton v. California, 496 U.S. 128, 134 (1990), the Supreme Court identified several criteria that would support a finding that an inculpatory object discovered in plain view was not seized in contravention of the Fourth Amendment. See United States v. Paige, 136 F.3d 1012, 1023 (5th Cir.1998). First, the member of law enforcement who discovered the object in plain view must have had a lawful right to be in the place where it was recovered. Id. Second, the object had to have been observed in plain view. Id. Third, the inculpatory nature of the object must have been apparent, in the sense that it would immediately provide law enforcement with probable cause to believe that the object is a derivative of a crime. Id. However, the foregoing should not be interpreted too narrowly, for the Fifth Circuit has also recognized that law enforcement does not actually have to be cognizant that the object discovered is contraband, "'only that there be a practical, nontechnical probability that incriminating evidence is involved.'" United States v. Hill, 19 F.3d 984, 989 (5th Cir.1994). Fourth, law enforcement must have been in a position to lawfully secure access to the object. Paige, 136 F.3d at 1023. See also U.S. v. Santiago, 410 F.3d 193, 200-201 (5th Cir. 2005)

Those factors are readily met in this case. McGee had a lawful right of access to the vehicle, as it was pulled over on a public highway. The driver's side window of the car was down, and McGee could easily see the marijuana in the console of the vehicle. Thus, the marijuana was in plain view inside the vehicle. Having smelled the strong odor of marijuana, the presence of the substance in the car would have been apparent to McGee, an experienced officer and supervisor of the street crime interdiction unit. Given Defendant's behavior,

once McGee saw the marijuana in the vehicle, he had probable cause to seize it and frisk the vehicle for weapons to ensure officer safety. Michigan v. Long, 463 U.S. 1032 (1983)(holding that police may engage in warrantless "frisks" of vehicles when they have reasonable belief that driver poses danger and that weapon may be inside car). See also United States v. Maestas, 941 F.2d 273, 277-278 (5th Cir. 1991)("Indeed, to require any one particular fact or observation to conform to a pre-established standard before it could be used to support a weapons search would undermine the notion that a police officer's reasonable suspicions may arise from the rational inferences of what he sees and hears.").

Defendant challenged the exact sequence of these events during the cross-examinations of Officer McGee and Agent Pias. When Agent Pias spoke to Officer McGee about the traffic stop and search, Pias understood from the conversation that McGee saw the marijuana, arrested Defendant and then searched the vehicle. Presumably, this would validate the search as a search incident to an arrest. New York v. Belton, 453 U.S. 454, 462 (1981); U.S. v. Sanders, 994 F.2d 200, 208-209 (5th Cir. 1993). However, McGee testified that he did not arrest Defendant prior to the search. Instead, Defendant was handcuffed for officer safety. The audio from the stop also confirms that McGee had decided to search the car even before he saw the marijuana in the console area.

The discrepancy in the actual sequence of events (stop – search – arrest v. stop – arrest – search) is of no real moment given the circumstances in this case. As explained above, McGee had probable cause to believe the car contained drugs, so his statement to Defendant that he was going to search the car even before McGee saw the marijuana in plain

view does not invalidate the search. Furthermore, even if McGee lacked probable cause to search the vehicle at the time he approached it with intent to search it, he saw the marijuana in plain view *before* he opened the driver's side door. The discovery of the marijuana in plain view, coupled with the other information then known to McGee, provided probable cause for the arrest of Defendant and the search of the vehicle.

**Immunity From Prosecution**

In his post-hearing memorandum, Defendant does not address his initial contention that evidence should be suppressed because he was granted immunity from prosecution for certain offenses. Accordingly, this issue has not been briefed and is considered abandoned. However, even if the issue were not deemed abandoned, the facts as shown above satisfy the court that there has been no violation of the agreement between Defendant and Agent Pias.

**Incriminating Statements**

Defendant also makes a conclusory argument that any statements he made after his arrest should be suppressed as fruit of the poisonous tree. Because there has been no Fourth Amendment violation, this argument has no merit. Defendant also argues that his statements were involuntary. He does not elaborate on this argument, and the Government did not address it. In any event, the evidence shows that Defendant was interviewed by Agent Pias the day after the arrest, and Pias advised Defendant of his <u>Miranda</u> rights. There is no evidence whatsoever that Defendant's statements to Pias were the product of any coercion, duress or improper police tactics.

**Summary and Conclusion**

The police planned to stop Defendant because he had just left a house under surveillance for suspected drug activity. Three other cars had left that same residence before Defendant, and all three were found to contain illegal drugs. When the officers pulled behind Defendant in preparation to make the stop, they noticed Defendant's vehicle had no license plate. That traffic violation, in and of itself, provided probable cause for the initial stop.

Once Defendant was stopped, he readily admitted he had no insurance on the vehicle. At that point, Officer McGee decided to impound the vehicle. Before doing so, he would have inventoried the contents of the car pursuant to his Department's policy. But before he could even begin the impound process, he developed probable cause that the car contained illegal drugs. Defendant had just left a suspected drug house, reeked of the smell of marijuana, acted very nervously, admitted he was on parole, and admitted the presence of marijuana in the car. Given all of the circumstances he faced, McGee acted properly when he "frisked" Defendant's car. See Estep v. Dallas County, 310 F.3d 353 (5th Cir. 2002)("officers are called upon to make split-second judgments in oftentimes tense situations.... the officer in the field is in a much better position than a judge in his office to determine whether a situation truly places the officer in danger.")

The search of the car and the seizure of the drugs, gun and grenades were proper. There is no legal basis upon which to suppress the evidence in question.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 23)** be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 12th day of May, 2006.

								_____
								MARK L. HORNSBY
								UNITED STATES MAGISTRATE JUDGE